521 A.2d 469

**Ernest JACKSON and Helen Jackson, His Wife, Appellants,**

**v.**

**SUN OIL COMPANY OF PENNSYLVANIA, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 19, 1986.

Filed Feb. 24, 1987.

56

Michael F. Wenke, Media, for appellants.

Stephen J. Sundheim, Philadelphia, for appellee.

Before CAVANAUGH, OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

This is an appeal from the grant of summary judgment in favor of appellee, Sun Oil Company of Pennsylvania ("Sun"), and against appellants, Ernest and Helen Jackson. The Jacksons brought this suit based upon the tort of intentional infliction of emotional distress. Finding no basis for such a claim, we affirm the order of the trial court.

Initially, we note the standard of review to be applied.

When reviewing the grant of summary judgment, the court must accept as true all well-pleaded facts in the non-moving party's pleadings and give the non-moving party the benefit of all reasonable inferences to be drawn therefrom. In order to uphold a grant of summary judgment, the record must demonstrate both an absence of genuine issues of material fact and an entitlement to judgment as a matter of law.

*Chicarella v. Passant*, 343 Pa.Super. 330, 340, 494 A.2d 1109, 1114 (1985). Accepting as true all appellants' well-

pleaded facts, the following is a summary of the events giving rise to this action.

Mr. Jackson had been employed by Sun as a burner service mechanic for some time. In that position, Jackson would travel to the homes and businesses of Sun's customers and inspect or repair their heating equipment.

On September 19, 1979, Jackson was assigned to inspect and repair a furnace at the home of Mr. and Mrs. Miersky. Shortly after completing this work assignment, Jackson was summoned to the office of Sun's service manager, Al Kuntz, who told him that the Mierskys' daughter had accused Jackson of making sexually suggestive comments and advances. Kuntz also told Jackson that pending an investigation by Sun, Jackson would not be permitted to make service calls. Rather, he would be assigned to work inside the terminal. Jackson denied the allegations.

Upon Sun's request, Jackson took and passed a lie detector test on October 12, 1979. It is undisputed that, at that time, he was told of the test results. Following this test, Sun permitted Jackson to resume his normal duties servicing heating equipment.

In December of 1984, Jackson had a chance meeting with Mr. Kuntz during which time Kuntz stated to Jackson, and in the presence of others, that Ms. Miersky was lying. Jackson filed a claim for intentional infliction of emotional distress based upon: (1) Sun's alleged failure to tell Jackson's co-workers that he had passed the lie detector test and (2) Sun's failure to tell Jackson and his co-workers that Ms. Miersky had recanted her allegations. The trial court granted Sun's motion for summary judgment, holding that the law imposed no such obligations on Sun.

 The essence of appellants' claim is that Sun failed to remove the taint of the incident from the mind of Mr. Jackson and the minds of his co-workers.[1] In effect, appel-

---

1. In their complaint as well as throughout their arguments, appellants have based this action on Sun's alleged failure to clear his name. The pertinent averments provide as follows:

lants seek relief pursuant to Section 46 of the Restatement (Second) of Torts because Sun "intentionally" failed to clear Jackson's name. Section 46 defines such a claim as follows:

**Sec. 46. Outrageous Conduct Causing Severe Emotional Distress**

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts, Sec. 46 (1965). Liability is not recognized pursuant to Section 46 absent proof that the

13. In or about December, 1984, Plaintiff-Husband discovered that Mr. Al Kuntz, who had made him an object of ridicule by having him do the janitorial work in the office, had personal knowledge that the accusing woman, Rene Miersky, was confronted with Plaintiff-Husband having passed a lie detector test and confessed that he was wrongly accused.

14. The Defendant, through its employees and agent, expecially Mr. Al Kuntz, knew this prior to Plaintiff being returned to his job as a service technician *but never attempted to rectify the outrageous conduct so as to restore Plaintiff-Husband's status and character.*
\* \* \* \*

19. As a direct and proximate result of defendant's outrageous and despicable conduct, including, but not limited to, *their failure to inform Plaintiffs and Plaintiff-Husband's fellow Sun Oil Company of Pennsylvania employees that Plaintiff-Husband had passed a lie detector test regarding Ms. Miersky's accusations and/or that Ms. Miersky had recanted said accusations,* Plaintiff-Husband has suffered severe emotional distress and has incurred unnecessary expenses and debts.
\* \* \* \*

26. Defendant's extreme and outrageous conduct, as is more specifically set forth above, was done with intent to inflict severe emotional distress upon Plaintiff-Husband or with knowledge that such severe emotional distress was certain, or substantially certain, to result from such extreme and outrageous conduct, or with reckless and deliberate disregard of a high degree of probability that severe emotional distress would follow.

Complaint at 4, 5, 7 (emphasis added). We note that Sun's conduct regarding the investigation of the allegations and its decision to remove Jackson from his normal duties pending the results of the investigation are not in question here. Jackson agrees that Sun acted properly in placing him inside the terminal pending the outcome of the investigation. (Deposition of Jackson, 49–50). Jackson also admitted that he had no complaints regarding Sun's methods of conduct-

defendant's intentional or reckless act caused the plaintiff's emotional distress. "The requisite 'intention' which one must display for liability to be imposed under the tort of outrage is 'knowledge on the part of the actor that *severe emotional distress is substantially certain to be produced by his conduct.*'" *Hoffman v. Memorial Osteopathic Hospital,* 342 Pa.Super. 375, 381, 492 A.2d 1382, 1385–1386 (1985), *quoting Forster v. Manchester,* 410 Pa. 192, 199, 189 A.2d 147, 151 (1963) (emphasis in original). There is no liability pursuant to Section 46 for the mere negligent infliction of emotional distress. *Pierce v. Penman,* 357 Pa.Super. 225, 231–232, 515 A.2d 948, 951 (1986).

■ There is no cognizable claim under Section 46 where the failure to act, i.e., negligence of a party, forms the basis of the claim. Contrary to appellants' assertions, the law imposes no burden on Sun to make public the results of the investigation. Indeed, if Sun had published this information to Jackson's co-workers, Sun may have been exposed to a different type of tortious liaiblity.

■ Further, there is no indication here that Sun intended to cause distress to Jackson or knew with substantial certainty that such a result would occur. The only evidence of record which sheds light on Sun's intentions is the undisputed fact that after Jackson passed the polygraph test, Sun considered him innocent and authorized Jackson to resume his normal duties.

■ The claim based upon the alleged recantation by Ms. Miersky must also fail. Under these circumstances, there is no basis for a claim based upon Sun's alleged failure to tell Jackson of her recantation.

■ This claim also fails, however, for an additional reason. There is simply no evidence of record that Ms. Miersky did, in fact, recant her story. Appellant's argument in this regard is based upon the statement of Jack Kettrick, an individual who was present at the chance meeting in 1984

ing the investigation and no complaint arising from Sun's request that he submit to a polygraph examination. (Deposition of Jackson, 68).

between Kuntz and Jackson and Kuntz's statement to Jackson. In his affidavit, Mr. Kettrick recalls that Kuntz stated: "we found out the girl was lying." (R. 87a). This statement does not even imply that Ms. Miersky confessed to Kuntz and recanted her allegations. Kuntz avers that he did not speak to or see Ms. Miersky after the initial encounter and appellants do not dispute Kuntz's averments that the Miersky's prohibited him from speaking with their daughter after Jackson passed the polygraph test.

We also reject appellants' inference that Kuntz's statement gave rise to an alleged recantation. Kuntz testified at his deposition that in 1984 he told Jackson, "Ernie, when you passed that lie detector test and we found out the girl was lying, we gave you a clean bill of health and never held it against you ever." (Deposition of Jackson, 88). Kuntz never stated that Ms. Miersky recanted her story and appellants present no evidence which puts this contention into dispute. Appellants cannot oppose a motion for summary judgment by argument alone. Because they have presented no evidence indicating that the recantation, in fact, took place and that Sun was aware of the recantation, we must conclude that appellants' claim is without basis.

Order affirmed.