539 A.2d 858

Joseph R. DAUGHEN, Joan Daughen and Joan Patrice Daughen, a Minor by Joseph R. Daughen, Her Guardian, Appellants,

v.

Stuart A. FOX, D.V.M., F. Sawires, D.V.M., and Hospital, Inc., D/B/A Rau Animal Hospital, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 27, 1987.

Filed March 30, 1988.

406

Randi J. Vladimer, Philadelphia, for appellants.

Ralph L. Hose, Ardmore, for Hosp., Inc., appellees.

Before CAVANAUGH, BECK and HESTER, JJ.

CAVANAUGH, Judge:

The first issue raised in this appeal is whether a cause of action exists for intentional infliction of emotional distress arising from the death of one's dog. In this case the appellants, Joseph R. Daughen, Joan Daughen and their minor daughter, Joan Patrice Daughen, commenced an action in trespass and assumpsit against the appellees. Count I was in trespass and alleged that the appellees, Stuart A. Fox, D.V.M., F. Sawires, D.V.M., and Hospital, Inc., trading and doing business as Rau Animal Hospital, who were the defendants below, intentionally or with reckless disregard of the consequences of their actions, caused the appellants to suffer severe emotional distress. The second count was also in trespass and alleged that the misconduct of the appellants resulted in the loss of appellees' pet dog, a unique chattel and caused them to suffer the loss of their dog's companionship and comfort. The third count was in assumpsit and alleged breach of express and implied warranties by the negligent and reckless conduct of the appellees. The appellees filed a motion for summary judgment which was granted by order of the court through Corso, J. on February 20, 1987. An appeal has been taken to this court.

Pa.R.C.P. 1035(b) provides in part that summary judgment "... shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled *to a judgment as a matter of law* ..." A motion for summary judgment should be granted where the pleadings, discovery and affidavits reflect no genuine issue of material fact. *Loyal Christian Benefit Association v. Bender*, 342 Pa.Super. 614, 493 A.2d 760 (1985). A summary judgment should be entered only in those cases which are clear and free from doubt. *Weiss v. Keystone Mack Sales, Inc.*, 310 Pa.Super. 425, 456 A.2d 1009 (1983). The court must accept as true all well-pleaded facts in the non-moving party's pleadings, and give the non-moving party the benefit of all reasonable inferences to be drawn therefrom. *Spain v. Vicente*, 315 Pa.Super. 135, 461 A.2d 833 (1983); *Metal Bank of America v. Insurance Company of North America*, 360 Pa.Super. 350, 520 A.2d 493 (1987); *Mowery v. Prudential Property & Casualty Insurance Company*, 369 Pa.Super. 494, 535 A.2d 658 (1988).

Applying these rules, the facts may be summarized as follows. The appellants were the owners of an eight year old mongrel dog called Cindy which had been a family pet since it was born. In June, 1980, Mr. and Mrs. Daughen took their dog to Rau Animal Hospital for examination as she had been vomiting her food for some two days. Dr. Fox, who is a veterinarian, examined the dog and prescribed medication. The next day the dog's condition worsened and the appellants returned to the veterinary hospital where the animal was examined and catherized by Dr. Sawires. Medicine was also administered to the animal. The dog was returned to the hospital the next day for an x-ray in accordance with Dr. Sawires' instructions. The x-ray was taken and the same day Dr. Sawires told the appellants that the x-rays showed a needle was in the animal's intestine and that surgery was essential to save the dog's life. The Daughen's authorized the surgery. After the surgery, the appellants were advised that the needle was not found during the operation, but additional x-rays indicated that there was an object referred to in the complaint as a "bullet" in or near the animal's liver. Dr. Sawires admittedly had mixed up two x-rays of similar dogs and the first

x-ray showing the needle was not an x-ray of the appellant's dog. Dr. Sawires told the appellants that there had been signs of lead poisoning and that the personnel at Rau Animal Hospital were not qualified to remove the bullet by medical procedures. He advised that only personnel at the University of Pennsylvania were so qualified. Dr. Fox told the appellants that their dog was too weak for such surgical procedure. The dog died on June 29, 1980 and had been at Rau Animal Hospital since June 25, 1980. According to the complaint, Dr. Fox and Dr. Sawires intended to conceal from the appellants the fact that they had operated on their dog on the basis of an x-ray of another dog.

■ The thrust of Count I is the intentional or reckless infliction of emotional distress as set forth in Restatement (Second) of Torts, § 46 which provides in part:

§ 46. Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Our court has stated that § 46 of the Restatement (Second) of Torts has been adopted in Pennsylvania. *Stoddard v. Davidson,* 355 Pa.Super. 262, 513 A.2d 419 (1986) citing *Bartanus v. Lis,* 332 Pa.Super. 48, 480 A.2d 1178 (1984); *Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 437 A.2d 1236 (1986); *D'Ambrosio v. Pennsylvania National Mutual Casualty Company,* 262 Pa.Super. 331, 396 A.2d 780 (1978). We pointed out in *Bartanus v. Lis,* 332 Pa.Super. at 61, 480 A.2d at 1185 (1984); "... the intentional infliction of emotional distress is an evolving tort and its scope has not yet been clearly defined." Citing *Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970). However, our Supreme Court recently stated in *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988, (1987): *"Previously this Court has acknowledged but has never had occasion to specifically adopt section 46 as the law of*

*Pennsylvania."* (Emphasis added) The Supreme Court pointed out in footnote 1, 515 Pa. 185, 527 A.2d 988–989:

> 1. Reference was made to section 46 in *Papieves v. Kelly,* 437 Pa. 373, 378, 263 A.2d 118 (1970). The principle adopted in that case, however, was derived from Restatement (First) of Torts § 868 (1939), which provides for liability to a decedent's family member for the wanton mistreatment or intentional withholding of that decedent's corpse. In *Forster v. Manchester,* 410 Pa. 192, 189 A.2d 147 (1963), we rejected a claim which sought to invoke Restatement (First) of Torts § 46 (rev. 1948), which required intent to cause severe emotional distress, because there had been no showing of such intent. We also concluded that the conduct complained of was not "outrageous." Thus it was unnecessary to consider the adoption of section 46, as then written, as the law in Pennsylvania. *Various other courts have incorrectly taken the view that this Court has adopted section 46.* See, e.g. *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d Cir.1979); *Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 437 A.2d 1236 (1981). (Emphasis added.)

The court stated that it would "again leave to another day the viability of section 46 in this Commonwealth." 515 Pa. 185, 527 A.2d at 989.[1] The court also stated in footnote 5 in *Kazatsky* at 515 Pa. 194–195, 527 A.2d at 993:

> 5. It is interesting to note that this tort is not truly a judicial development simply "restated by the American Law Institute. Although it relies on prior cases, the Restatement in this area has generated the law more than it has restated it." ... "Academics, rather than courts, were the prime movers in the development of the tort of intentional infliction of severe emotional distress by outrageous conduct: the modern tort was introduced

---

1. In his concurring opinion Justice Hutchinson stated at 515 Pa. 200–201, 527 A.2d 996:

> I do not believe the new intentional tort proposed by Section 46 of Restatement of Torts 2d, with its undefined parameters, has any place in either Pennsylvania precedent or policy.

in the pages of law reviews, and then refined and finally defined by the American Law Institute in its *Restatements.*"

In *Kazatsky, supra,* a dispute arose over payment for a grave marker between the purchasers of the marker and the cemetery company and insistence by the company that perpetual care be purchased for the grave in question. The claim of emotional distress was based on the defendant's alleged use of threats to coerce the plaintiffs into purchasing a perpetual care contract for their deceased children's grave. The court did not reach a determination as to whether the defendant's conduct fell within the ambit of § 46 as the plaintiffs presented no expert testimony concerning their alleged injuries. The court held that: "... if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." 515 Pa. 197, 527 A.2d 995.

The court further pointed out that "The species of tort created by section 46 provides only the most nebulous definition of 'outrageous' conduct." 515 Pa. 194, 527 A.2d 993. The court quoted extensively from *Givelber, The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct,* 82 Colum.L.Rev. 42, 52–53 (1982) including the statement that:

The outrageousness test presents the related difficulty that recovery often depends, at least in the first instance, upon a court's determination that the defendant behaved in an immoral and uncivilized fashion. Yet, despite claims that they serve as "society's conscience," courts may have no particular wisdom with respect to what is socially intolerable. The court's gatekeeping task is hardly aided by the Restatement's glib assurance that the tort covers only those cases that are so extreme that people are literally aroused to proclaim "outrageous."

In view of the Supreme Court's recent comments concerning § 46, we would be hesitant to find that a case had been

made out under this theory. However, we need not give recognition to the cause of action since we agree that in any event this case does not present a § 46 claim.

Assuming that § 46 of the Restatement (Second) of Torts were to become the law of Pennsylvania, essential elements under § 46 are the extreme and outrageous conduct towards the plaintiff. *Jones v. Nissenbaum, Rudolph & Seidner,* 244 Pa.Super. 377, 368 A.2d 770 (1976); *Reimer v. Tien,* 356 Pa.Super. 192, 514 A.2d 566 (1986). It is for the court to determine in the first instance whether the defendants' conduct can reasonably be regarded as so extreme and outrageous as to permit recovery. *Dawson v. Zayre Department Stores,* 346 Pa.Super. 357, 499 A.2d 648 (1985). See also Restatement of Torts (Second) § 46 Comment (h). In the *Dawson* case, *supra,* an employee of the defendant used a racial slur towards the plaintiff. We upheld the grant of a demurrer as the conduct outlined in the complaint did not possess the degree of severity necessary to establish a cause of action. Comment (d) to section 46 discusses extreme and outrageous conduct:

> d. *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim,

"Outrageous!." [2]

The essential outrageous conduct required has been referred to in *Lazor v. Milne*, 346 Pa.Super. 177, 180, 499 A.2d 369, 370, 371 (1985) as "major outrage" which would appear to require conduct beyond merely outrageous. In *Lazor, supra*, a letter was sent to the plaintiff by the officers of a club telling her that it had been brought to their attention that she had been harrassing employees, bringing her own food to the club and conducting herself in the presence of new members in a way prejudicial to the welfare of the club. The letter also stated that if her action continued, the board would take disciplinary action. We sustained the grant of preliminary objections on the grounds that a cause of action had not been set forth as the conduct did not constitute a major outrage.

In *Jones v. P.M.A. Insurance Company*, 343 Pa.Super. 411, 413, 495 A.2d 203, 204 (1985), we again sustained the dismissal of preliminary objections to a complaint alleging intentional infliction of emotional distress. The alleged outrageous conduct occurred when the defendant's attorney told the plaintiff's lawyer who represented him in a claim for workmen's compensation benefits "we would pay him if he wasn't represented by you." Allegedly, this statement caused the plaintiff a great deal of distress. A further example of noncompensatory conduct in connection with matters of a legal nature is *Jones v. Nissenbaum, Rudolph*

2. Parenthetically, we note our decision in *Halliday v. Beltz,* 356 Pa.Super. 375, 514 A.2d 906 (1986) which involved an action for negligent infliction of emotional distress in a medical malpractice suit. Preliminary objections were sustained. The plaintiff's wife was operated on and complications arose following the surgery which resulted in her death. We found no cause of action existed as the plaintiff did not witness the specific negligent actions which is required to recover for negligent infliction of emotional distress. We recognize that *Halliday* involved a claim for *negligent* infliction of emotional distress while the case before us involves intentional or reckless infliction and the applicable law is not the same. However, where a husband is denied recovery because he did not actually observe the operation performed upon his spouse, it would indeed appear incongruous to allow a cause of action for intentional infliction of emotional distress where the alleged wrongful acts committed against the appellants' dog were not observed.

*& Seidner, supra,* where a law firm wrote to the plaintiffs and stated that their house was to be sold at sheriff's sale. Also, an agent of the law firm's client came to the plaintiffs' house and told them that the house was going to be sold and that they had 30 days to get their junk out. The plaintiffs went to the law firm and again were told that their house was to be sold. The plaintiffs allege that this caused severe emotional distress resulting in the death of one of the plaintiffs. We stated in *Jones v. Nissenbaum, Rudolph and Seidner, supra,* apparently erroneously, that the Supreme Court recognized the tort of intentional infliction of emotional distress in *Forster v. Manchester,* 410 Pa. 192, 189 A.2d 147 (1963). However, we ruled that the conduct must be "extreme or outrageous." 244 Pa.Super. 383, 368 A.2d at 773 and the defendants' conduct did not rise to that level. In *Thompson v. Sikov,* 340 Pa.Super. 382, 490 A.2d 472 (1985) we affirmed the grant of a demurrer to a complaint alleging emotional distress. The husband plaintiff had received a verdict in a trespass action in the amount of $500,000.00 and the wife plaintiff in the amount of $150,000.00. After the verdict had been entered, counsel for the insurance carrier of one of the defendants told the plaintiff husband that they were not going to see any of the money and he was going to appeal. When this message was relayed to his wife, it caused her extreme emotional distress and she became almost paralyzed. We held that the remarks were privileged and in addition they could not form the basis of a cause of action under § 46 of the Restatement (Second) of Torts. *Buczek v. First National Bank,* 366 Pa.Super. 551, 531 A.2d 1122 (1987) is another case related to the pursuit of legal remedies. The plaintiff claimed emotional distress resulting from the defendant bank's attempt to collect overdue loans and to purchase their property in satisfaction of the obligations owed to the bank by the plaintiffs. The plaintiffs contended that the bank harassed them and engaged in self-dealing in violation of its fiduciary duties. This court, through Beck, J., agreed that as a matter of law the complaint did not set forth a

cause of action under § 46 and sustained preliminary objections in the nature of a demurrer.

In *Hoffman v. Memorial Osteopathic Hospital,* 342 Pa. Super. 375, 492 A.2d 1382 (1985) we set aside a jury verdict in favor of the plaintiff and granted a new trial. The facts established that the plaintiff tripped and sprained his back at work. After visiting his family doctor he was still having trouble with his legs. Finally, he was taken to the defendant hospital complaining about pain in his legs. After being examined by a doctor, the plaintiff was told he could leave. However, he could not get out of a chair and fell on the floor. The doctor told the plaintiff he could get up and go home, but he could not do so and began to cry. The doctor then told him that he had sick patients to care for and he walked out of the room. The plaintiff remained on the floor, continuing to cry and stating that his legs hurt. He did not have on a shirt, socks or shoes and the floor was cold. The plaintiff remained on the floor for one and one-half to two hours and was not provided with a pillow or a blanket. At one point, while the plaintiff was lying in the doorway of the emergency room, the doctor, who had returned, stepped over him and informed him again that there was nothing wrong and that he could go home. The doctor gave orders to the hospital staff not to assist the plaintiff up from the floor. We granted a new trial because the trial court did not give an explanation to the jury of the word "intentional." It was stated at 342 Pa.Super. 382, 492 A.2d 1386: "The requisite 'intention' which one must display for liability to be imposed under the tort of outrage is 'knowledge on the part of the actor that *severe emotional distress is substantially certain to be produced by his conduct.' Forster v. Manchester,* 410 Pa. 192, 199, 189 A.2d 147, 151 (1963) (emphasis in original)."

In *Pierce v. Penman,* 357 Pa.Super. 225, 515 A.2d 948 (1986) we held that reckless conduct causing emotional distress renders an actor as liable as if he acted intentionally, citing *Chuy v. Philadelphia Eagles Football Club,* 595

F.2d 1265 (3rd Cir.1979).[3]

In *Jackson v. Sun Oil Company*, 361 Pa.Super. 54, 521 A.2d 469 (1987) we affirmed the grant of summary judgment in favor of the defendants. The plaintiff claimed intentional infliction of emotional distress. The plaintiff was employed by Sun Oil Company as an oilburner service mechanic. After repairing a furnace in a private home, the owner's daughter complained to Sun Oil that he had made sexual advances to her. The plaintiff was told that pending an investigation, he would not be allowed to make service calls. He took and passed a lie detector test and was then permitted to return to his duties servicing heating equipment. Some years later, the plaintiff's service manager told him in the presence of witnesses that the complainant had lied. The complaint filed by the plaintiff alleged emotional distress from Sun Oil's failure to tell the plaintiff that he had passed the lie detector test and its failure to tell his fellow employees that the complainant had recanted her allegations. We held that "There is no cognizable claim under Section 46 where the failure to act, i.e. negligence of a party, forms the basis of the claim ... Further, there is no indication here that Sun intended to cause distress to Jackson or knew with substantial certainty that such a result would occur." 361 Pa.Super. 59, 521 A.2d at 471.

The appellants cite the case of *Banasczek v. Kowalski*, 10 Pa.D. & C. 3rd 94 (Luzerne County 1979) in support of their argument that the existence of the tort of intentional infliction of emotional distress relating to the right of a dog owner to recover for mental suffering caused by the destruction of the owner's dog, is well settled in Pennsylvania. In *Banasczek v. Kowalski, supra,* the complaint for emotional distress alleged that the defendant intentionally shot two of the plaintiff's dogs. The court dismissed the defendant's preliminary objections in the nature of a demurrer "... since we think the more enlightened view is to allow

3. We must recall that the Supreme Court in *Kazatsky v. King David Memorial Park, supra,* cited the *Chuy* case as one of the cases which incorrectly took the view that the Supreme Court had adopted Section 46.

recovery for emotional distress in the instance of malicious destruction of a pet ..." 10 Pa.D. & C. 3rd at 97. Even if we were to agree with this expression of the law, it does not compel the conclusion that the complaint in this case has set forth a cause of action.

In the instant case, the appellants allege that the defendants seriously erred in performing an operation to remove a needle from their dog's intestine, when the basis for their diagnosis was the x-ray of another dog. They also allege that Dr. Sawires' statement that the dog would die without surgery to remove the needle, caused them "severe emotional distress, anxiety and concern for the survival of Cindy" (Complaint paragraph 17(J)). The appellants also contend that distress was caused by "cropping" the x-ray which incorrectly showed a needle in their dog's intestine. The appellees admitted cropping the x-ray, but only to delete the name of the owners of the dog whose x-ray it was.

Under the admitted facts of the case, we agree with the court below that as a matter of law, the complaint does not set forth a cause of action. The principal misconduct alleged was directed to the appellants' dog, and consisted in performing an operation based on another animal's x-ray. Further, it was alleged that the proper medical treatment was not obtained for the dog after the appellees realized their mistake. This is an allegation of incompetence which led to the animal's death. It is not extreme and outrageous conduct directed at the appellants, although they undoubtedly suffered grief at what they feel was the untimely and unnecessary death of their pet dog.

The thrust of section 46 is conduct on the part of the defendant which causes emotional distress. In the appellants' complaint there is emphasis not so much on what the appellees did to their pet dog, but what they did not do. For example, the appellants complain that after the dog was operated on, Dr. Sawires "evaded answering further questions" paragraph 21 of the complaint. In paragraph 22, they complain that Dr. Sawires failed to advise the appel-

lants that further medical treatment was required for their dog and in the alternative that nothing could be done by anyone for the dog and that she was likely to die of lead poisoning. This goes to alleged improper medical advice and none of the conduct rises to the level of outrageous conduct required under section 46. It is evident that our Supreme Court does not look benevolently upon section 46 and it waits until another day to determine its viability as part of Pennsylvania law. Even if section 46 becomes firmly entrenched in our jurisprudence, the facts in this case do not constitute the outrageous conduct that is an essential element of the tort.

■ The second issue for our consideration is whether the court below properly granted summary judgment in favor of the appellees as to Count II of the complaint which sought damages for the loss of a unique chattel and for loss of the dog's companionship and comfort. The court below properly entered summary judgment as to this count. Under Pennsylvania law, a dog is personal property.[4] The fundamental purpose of damages for an injury to or destruction of property by tortious conduct of another is to compensate the injured party for actual loss suffered. *Commonwealth of Pennsylvania, Department of Transportation v. Crea Estate,* 92 Pa.Cmwlth.Ct. 242, 483 A.2d 996 (1977). As in this case, where the property has been destroyed, the measure of damages would be the value of the property prior to its destruction. See *Miller v. C.P. Centers, Inc.,* 334 Pa.Super. 623, 483 A.2d 912 (1984). Appellants, however, claim that their dog was a unique chattel whose value to them exceeded the monetary value of a mongrel dog. While the appellants undoubtedly had a sentimental attachment to their dog, this would not make it unique chattel under the law.

■ The appellants also contend in Count II that they would be entitled to damages for loss of companionship due

---

4. The "Dog Law" 3 Pa.C.S. § 459–102 defines a dog as "The genus and species known as Canis familiaris". 3 Pa.C.S. § 459–601(a) states *inter alia,* "All dogs are hereby declared to be personal property ..."

to their dog's death. This assertion is clearly without merit.[5] Companionship is included in the concept of consortium, which is a right growing out of a marriage relationship giving to each spouse the right to the companionship, society and affection of each other in their life together. *Burns v. Pepsi–Cola Metropolitan Bottling Company,* 353 Pa.Super. 571, 510 A.2d 810 (1986). Under no circumstances, under the law of Pennsylvania, may there be recovery for loss of companionship due to the death of an animal.

Finally, we come to the issue of grant of summary judgment as to Count III of the complaint. This Count sounded in assumpsit and alleged breach of express and implied warranties. While the court by its order of February 20, 1987 granted the appellees' motion for summary judgment as to all counts, it is clear from its opinion of May 4, 1987, filed after an appeal was taken to this court, that it did not intend to include Count III within the ambit of summary judgment and Count III remains a viable cause of action. Accordingly, the court below entered an order on June 17, 1987 vacating the order of February 20, 1987 and granting the motion for summary judgment only as to Counts I and II. On October 1, 1987, we determined that the court below was without jurisdiction to enter the order of June 17, 1987. See Pa.R.A.P. 1701. We now reverse the order of February 20, 1987 of the court below as to Count III and affirm the order as to the grant of summary judgment as to Counts I and II. The action shall continue in the court below only as to Count III dealing with breach of express and implied warranties.

Summary judgment affirmed as to Counts I and II and these Counts are dismissed. Order granting summary judgment as to Count III reversed.

**5.** The appellants cast their second issue on appeal in terms of "negligence and/or malpractice." In the court below in their "Memorandum of Law in Support of Answer to Defendants' Motion for Summary Judgment" the only reference to Count II is "Count II [claims] damages for the loss of a unique chattel, a valuable and cherished pet, due to defendants' treatment of Cindy, as well as defendants' intentional coverup." This does not go to the question of loss of companionship, but that claim was presented in the complaint.