## Kryeski v. Schott Glass Technologies Inc.

*Peter Loftus*, for plaintiffs.
*John J. Meyers*, for defendant.

WALSH, *P.J.*, January 18, 1991 — Today we are called upon to consider the preliminary objections of

defendant, Schott Glass Technologies Inc., in the above-captioned action. Plaintiffs, Sarah and Ronald Kryeski, have filed an eight-count complaint against Schott which includes: sexual harassment and discrimination, personal injury, intentional infliction of emotional distress, conspiracy, libel and slander, invasion of privacy, loss of consortium and punitive damages.

Defendant has filed preliminary objections to all counts except the sexual harassment and discrimination count. Defendants have raised a question of jurisdiction in regard to count II, personal injury, and count III, intentional infliction of emotional distress. Defendant has also demurred to count III, intentional infliction of emotional distress, count IV, conspiracy, count VI, invasion of privacy, and count VII, loss of consortium. Defendant has motioned to strike count VIII, punitive damages, and they have also motioned to strike certain scandalous and impertinent matters. Defendant finally motions for a more specific pleading in regard to count V, libel and slander.

Plaintiffs have made several allegations in support of their complaint. Sarah Kryeski was hired by Schott in 1972 as a clerk typist. She remained in this position until 1982 when she was transferred to the laboratory as an assistant lab technician. Plaintiff claims that in July 1987 she was approached by a male lab supervisor at a party. The supervisor made advances on Mrs. Kryeski by placing his hands on her. Mrs. Kryeski did not acquiesce to these advances. She maintains that those female employees who did succumb to the supervisor's advances were given promotions, salary increases and additional training. Mrs. Kryeski asserts that her refusal to get involved with the supervisor led to retaliation by the supervisor and other employees against her. In

support of these accusations she notes that a female R&D technician was receiving senior lab technician's salary, but she was only assigned lab assistant responsibilities. The former R&D technician did not possess a high school diploma or GED equivalency. Plaintiff claims that she had to perform or assist this woman on many of the tasks assigned to her. The former R&D technician was then promoted over plaintiff as a senior lab technician. Plaintiff avows that the newly appointed senior lab technician was having an affair with the optical properties supervisor which is how she achieved her current status. Plaintiff believes the only way for advancement in the company is to give in to these sexual advances.

Plaintiff thereafter complained to the company's manager of human resources about the sexual harassment, all to no avail. After this complaint, plaintiff's desk was moved into a compressor room which was extremely loud and hot. She asked her supervisors to move the desk. The supervisors refused her request. Plaintiff then complained to the safety committee who moved her desk into an office with the former R&D technician who was promoted over her. Mrs. Kryeski claims this was another attempt to harass her by putting her in a room with the very person who allegedly used her promiscuity for company advancement.

Another employee brought suit against the company for age and sex discrimination after he had been terminated. Plaintiff was requested to testify on his behalf. Before plaintiff testified her supervisors asked her to change her testimony. The supervisors also informed her that the previous complaints by plaintiff had been redacted from her file. Notwithstanding this, plaintiff refused to change her story.

As time progressed, plaintiff claims she was being continually harassed concerning office procedures, certain measurements she had taken and using a wrong control for a specific type of glass.

On February 27, 1989 plaintiff notified Schott that she had to leave work due to work-related stress. Plaintiff's doctor provided a note which was given to the company's nurse. On March 3, 1989, plaintiff sought the services of a psychologist, who advised her to remain out of work until at least March 20, 1989. Plaintiff notified Schott that she had received a work-related injury on February 16, 1989, and that she was entitled to workmen's compensation. The company denied her claim.

Plaintiff filed a complaint with the Pennsylvania Human Relations Commission on June 19, 1989. The commission held a fact-finding conference. On September 18, 1989 plaintiff was questioned by the company's human resource manager concerning the testimony plaintiff gave at the fact-finding conference. Other witnesses who had witnessed the advances were also questioned. Although plaintiff's testimony was corroborated action was still not taken. Plaintiff claims this discrimination and harassment continues to this day and that the agents, servants and employees of Schott have made statements claiming plaintiff is crazy and emotionally unstable.

Count II and III of plaintiff's complaint states a cause of action for personal injuries to plaintiff's nerves and nervous system and intentional infliction of emotional distress which have rendered plaintiff sick and infirm. Defendant filed a preliminary objection in the nature of a petition raising a question of jurisdiction. It is the defendant's contention that workmen's compensation provides the sole and

exclusive remedy for plaintiff under these two theories of recovery.

Section 303(a) of the Pennsylvania Workmen's Compensation Act provides in pertinent part:

"(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employee, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108." 77 P.S. §481.

The Pennsylvania Supreme Court has held that the Workmen's Compensation Act covers *all injuries* and the exclusivity clause bars tort actions flowing from any work-related injury. *Kline v. Arden H. Verner Co.,* 503 Pa. 251, 469 A.2d 158 (1983). The act defines injury as follows:

"(1) The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employee, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury. . .. *The term 'injury arising in the course of his employment,' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment. . ."* 77 P.S. §411(1). (emphasis supplied)

Subsection 301(c)(1) of the act therefore creates a narrow exception to the exclusive nature of the act. Plaintiffs claim that they come under this exception.

In order to succeed on such an argument, plaintiffs must allege and prove that defendant's acts were intentional in nature and committed because of reasons personal to defendant's supervisors and agents. Counts II and III do contain the requisite allegations of intentional acts. Plaintiff claims to be sick and infirm because of the outrageous, intentional, wanton and malicious conduct of defendant. (Complaint paragraph 75.)

The decisive issue is whether defendant's supervisors and agents acted intentionally because of reasons personal to them and not directed against plaintiff as an employee or because of her employment. Counsel for plaintiff argues that the ultimate objective behind the supervisors and agents conduct was to put plaintiff in such a position that she would have to acquiesce to the sexual advances. Plaintiff contends that sex is not an activity employees would generally be engaged in for furtherance of the business or affairs of the employer. It is further alleged that the retaliatory conduct commenced after plaintiff refused the sexual advances. We find the conduct and response of the supervisor to plaintiff's refusal to cooperate was personal and in no way advanced or could have advanced the company's business.

Plaintiff relies on *Gillespie v. Vecenie,* 292 Pa. Super. 11, 436 A.2d 695 (1981), in which the Superior Court upheld a cause of action by an employee against his employer when the employee was assaulted on the employer's premises by a fellow employee. The court noted that the employee had pled sufficient facts, which if ultimately proven would show that the employee tort-feasor acted out of personal animosity, thereby taking the suit out of the exclusivity of the Workmen's Compensation Act. *Id.* Our Superior Court has also held that the

definition of injury, as relied on by plaintiff, specifically excludes from the act's coverage an assault or attack by third persons because of personal animosity against the employee which does not result because of the relationship between employer and employee. *Mike v. Borough of Aliquippa.* 279 Pa. Super. 382, 421 A.2d 251 (1980).

As stated previously, plaintiff has pled numerous allegations in support of her claim which include among others: sexual discrimination, retaliation (placing plaintiff's desk in a compressor room, etc.), requests and demands to have plaintiff commit perjury, oppressive work atmosphere, denial of promotions, tedious tasks, unwarranted reprimands and statements claiming she is crazy and unstable. It is readily apparent that such behavior and acts are manifested in plaintiff's refusal to partake in the sexual advances. The supervisors and agents' conduct was an intentional attempt to make plaintiff's work day and life as miserable as possible. Because such conduct was performed to somehow soothe the supervisors male ego, we find that the retaliation was done for reasons personal to him and under the injury exception in 77 P.S. §411 and that this claim is not covered by the Workmen's Compensation Act.

Count III of plaintiffs' complaint (intentional infliction of emotional distress) is objected to on grounds that plaintiff has failed to state a cause action for which relief can be granted. Section 46 of the Restatement (Second) of Torts provides:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

The Pennsylvania Supreme Court has had occasion to consider the tort of intentional infliction of

emotional distress in *Kazatsky v. King David Memorial Park Inc.,* 515 Pa. 183, 527 A.2d 988 (1987). The *Kazatsky* court stated that they have acknowledged the existence of the tort of intentional infliction of emotional distress as stated in section 46 of the Restatement (Second) of Torts, but they never had occasion to specifically adopt section 46 as the law in Pennsylvania. Plaintiff's failure to establish a right of recovery in *Kazatsky* prompted the court "to leave to another day the question of the viability of section 46 in this Commonwealth."* The court further stated that "if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." Plaintiff has alleged that she is currently seeing a psychologist to deal with her emotional instability.

A dichotomy exists in the Superior Court as to whether intentional infliction of emotional distress is recognized in Pennsylvania. In *Daughen v. Fox,* 372 Pa. Super. 405, 539 A.2d 858 (1988), the Superior Court stated that "[o]ur court has stated that section 46 of the Restatement (Second) of Torts has been adopted in Pennsylvania." (citations omitted) However, a different panel of the Superior Court held that the tort of intentional infliction of emotional distress is not recognized in Pennsylvania. *Ford v.*

---

* Justice Larsen in his concurring opinion states his approval of the adoption of section 46 and further stated that "I believe that the majority has by implication adopted section 46 in this case." *Kazatsky v. King David Memorial Park Inc.,* 515 Pa. 183, 527 A.2d 989 (1987). Justice Papadakos also voiced his approval of section 46 in his concurring opinion in *Kazatsky* and he stated, "Because I believe that the language of section 46 of the Restatement of Torts is most appropriate for our needs in Pennsylvania, I have no hesitancy in adopting section 46 as the law in Pennsylvania."

*Isdaner,* 374 Pa. Super. 40, 542 A.2d 137 (1988), appeal denied, 520 Pa. 617, 554 A.2d 509 (1988). The majority opinion in *Ford* stated:

"*Kazatsky* makes clear that the tort of intentional infliction of emotional distress is not recognized in Pennsylvania." Although Judge Melinson concurred in the result, he expressly disagreed with the majority's interpretation of *Kazatsky* by stating:

"'I disagree with the majority's interpretation of *Kazatsky*. The majority states that *Kazatsky* 'makes clear that the tort of intentional infliction of emotional distress is not recognized in Pennsylvania.' In *Kazatsky,* the Supreme Court of this Commonwealth held that a plaintiff must present competent medical evidence of intentional infliction of emotional distress." *Ford v. Isdaner,* 374 Pa. Super. 40, 542 A.2d 137 (1988). (citation omitted)

In light of the Supreme Court's decision in *Kazatsky,* we concur with Judge Melinson and the *Daughen* panel's conclusion that the tort of intentional infliction of emotional distress is recognized in Pennsylvania. Accordingly, we find that plaintiff has set forth a cause of action in count III of her complaint. Plaintiff will have the opportunity to present competent medical testimony as she states in her complaint. Whether plaintiff has pled sufficient facts to establish extreme and outrageous conduct is best left to be decided in a motion for summary judgment. A decision concerning the outrageousness of the conduct without all of the pleadings would be prejudicial to both parties.

Defendant next contends that plaintiffs' complaint fails to allege facts sufficient to state a cause of action for civil conspiracy. To establish a civil conspiracy plaintiff must demonstrate that two or more persons combined or agreed with the intent to do an unlawful act or to do an otherwise unlawful

act by unlawful means. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 211, 412 A.2d 466 (1979). The requirement that two or more persons are necessary for the conspiracy to exist has not been established by plaintiff. Plaintiff claims that defendant conspired with its employees and agents. A conspiracy requires two conspirators. *Thompson Coal Co., supra.* The courts have consistently held that a corporation and its employees are not capable of a civil conspiracy. *Chambers Development Company Inc. v. Browning-Ferris Industries,* 590 F.Supp. 1528, 1541 (1984). Plaintiff has not cited any case law in support of their proposition that a corporation can conspire with its agents and employees. Therefore, we hold that defendant could not have conspired with its employees and the allegation of a civil conspiracy is dismissed for failure to meet the elements of that cause of action.

Defendants have also demurred to count VI of plaintiff's complaint which is entitled invasion of privacy. The Commonwealth has adopted the Restatement (Second) of Torts §652 D which provides:

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

"(a) would be highly offensive to a reasonable person, and

"(b) is not of legitimate concern to the public."

Presently, defendant claims plaintiff has failed to state a cause of action for invasion of privacy because plaintiff failed to allege publication. However, plaintiff specifically alleged publication in paragraph 87 of her complaint. The preliminary objection is denied and the sufficiency of publication can be addressed by a motion for summary judgment.

Defendant has also demurred to plaintiff's husband's claim for loss of consortium. Since plaintiff has stated causes of action in counts II, III and VI, the claim for loss of consortium is viable and does state a cause of action for which relief may be granted. Defendant's preliminary objection to count VII is denied.

Defendant next seeks to have alleged scandalous and impertinent matters stricken from the complaint as allowed by Pa.R.C.P. 1017(b)(2). The scandalous and impertinent material is contained in plaintiffs' complaint, paragraphs 9, 18, 21, 30, 33, 34 and 35. These paragraphs contain allegations of sexual discrimination, office affairs, perjury and alteration of employee records.

Scandalous matters consist of any unnecessary allegation which bears cruelly upon the moral character of an individual, or states anything which is contrary to good manners, or anything which is unbecoming to the dignity of the court to hear, or which charges some person with a crime not necessary to be shown. *Fromm v. Fromm,* 42 D.&C. 2d 77, 83 (1967). When the allegations do not appear to be wholly irrelevant in every particular, the allegations will not be stricken. *Id.* The aforementioned paragraphs go to the heart of plaintiffs complaint and are wholly relevant. Defendant's objection is without merit and therefore denied.

Plaintiff also seeks punitive damages and separately sets forth a cause of action for such in count VIII. A demand for punitive damages in a separate count with no cause of action stated in the count violates Pa.R.C.P. 1020(a). Rule 1020(a) provides: "[e]ach cause of action and any special damage related thereto shall be stated in a separate count containing a demand for relief." Count VIII does incorporate by reference all preceding paragraphs of

the complaint. However, the appropriate method in seeking punitive damages is to request such damages in each separate count of the complaint in accordance with Pa.R.C.P. 1020(a). Accordingly, plaintiffs must amend their complaint in conformity with Rule 1020(a).

Finally, defendants request a more specific pleading in regard to plaintiff's claim for defamation. "A complaint for defamation must, on its face, identify specifically what allegedly defamatory statements were made and to whom they were made." *Moses v. McWilliams,* 379 Pa. Super. 150, 549 A.2d 950 (1988). The complaint merely contains a general averment that defendant, through its agents and employees circulated untruths, false stories, and outward lies about plaintiff. There was no allegation as to what was said, who said it, or when it was said, as required by Pa.R.C.P. 1019(c). Accordingly, defendant's request for a more specific pleading as to the defamation count is granted.

### ORDER

Now, January 18, 1991, the following are hereby ordered and decreed:

(a) Defendant's preliminary objection in the nature of a demurrer to count IV, civil conspiracy, is sustained;

(b) Defendant's motion for a more specific pleading to count V, libel and slander, is sustained;

(c) Defendant's preliminary objections to count II—personal injury, count III—intentional infliction of emotional distress, count VI—invasion of privacy, count VII—loss of consortium and defendant's motion to strike scandalous and impertinent matter are denied; and

(d) Plaintiff shall amend their complaint by requesting punitive damages in each of the separate following counts of the complaint: counts II, III, V, VI, and VII, consistent with Pa.R.C.P. 1020(a).