Susan HOFFMAN, Plaintiff,

v.

BANKERS TRUST COMPANY, Defendant.

Civil A. No. 1:CV-95-0243.

United States District Court, M.D. Pennsylvania.

Nov. 20, 1995.

---

Spero T. Lappas, Harrisburg, PA, for plaintiff.

Michael D. Klein, LeBoeuf, Lamb, Leiby & MacRae, Harrisburg, PA, and Antonio F. Dias, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Pittsburgh, PA, for defendant.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is Defendant's motion for summary judgment and Plaintiff's motion to file a sur-reply brief. The issues have been briefed and the motions are ripe for disposition. On November 15, 1995, the court issued an order granting Defendant's motion for summary judgment and denying Plaintiff's motion to file a sur-reply brief. This memorandum supports that order.

## I. *Background*

The instant suit arises from an attempt by Plaintiff Susan Hoffman to redeem certain bonds through Bankers Trust Company ("BTC"). The events leading to this dispute began in a garbage transfer station in Jersey City, New Jersey in September or October of 1988. Hoffman was at the station in her capacity as a truck driver for Stonewood Transportation, whose business includes the transportation of garbage. At the garbage station, Hoffman was granted access to an area in which "rejected" magazines and coloring books were stored, and she was permitted to take materials from the area without charge. (Hoffman Dep. at 13–14.) While browsing, Hoffman happened upon approximately forty-six bonds issued by the state of Hawaii, each with a face value of $5000.00. Though Hoffman did not believe at the time that the bonds had any value, she took them because she thought that her children might find them entertaining. (*Id.* at 14, 15.)

When Hoffman returned home shortly thereafter, she "just kind of threw ... [the bonds] into a drawer." (*Id.* at 15.) She did not see the bonds again until late 1989, at which time she stumbled upon them while looking for paper to start a fire. (*Id.* at 17.)

At this time it occurred to Hoffman that the bonds may be of some value and she contacted BTC to inquire into their status. She believed that BTC was the appropriate entity to approach about the matter because BTC "is listed on the bonds as the payee or one of the paying agents." (*Id.* at 18.) She contends that she "wanted to do the right thing," told BTC representatives "the whole story," and "gave them a few of the numbers and asked them what I should do about it." (*Id.*) Hoffman was placed in contact with a BTC security officer and instructed to "send the bonds immediately in an envelope" to the security officer's attention. (*Id.* at 19.) Plaintiff elected not to follow the instructions given her by BTC security or make further inquiries with BTC at that time.

Next, Hoffman called the Jersey City police "to ask what my obligations were as far as reporting that I had found ... [the bonds]." (*Id.*) She states that the police "really didn't care what I did with them." Hoffman concluded that the police did not believe her story. (*Id.*)

Hoffman then called Wheat First Securities of Cumberland, Maryland and reached Patsy Green, a broker with Wheat First. Hoffman told Green the "whole story" and asked Green to investigate whether the bonds were outstanding. Green researched the bonds and informed Hoffman that they were payable and had not been reported lost or stolen, and she explained how Hoffman could go about redeeming them. (*Id.* at 20–21, 23.)

Hoffman also states that she called the Department of Finance in Hawaii seeking information on the status of the bonds. However, she does not indicate when this occurred, what information she sought, or what she was told. (*Id.* at 21.)

In March or April of 1990, Hoffman again called BTC to inquire into the worth of the bonds and whether they had been reported lost or stolen. She spoke to a BTC bond researcher and provided him with only one bond number. There is no indication that Hoffman told the BTC representative how she came into possession of the bond, that she was holding roughly forty-five more, or that she previously had been instructed by

BTC security to deliver the bonds to BTC. (*Id.* at 24.) The bond researcher informed Hoffman that the bond was outstanding and payable and instructed her to send the bond to BTC for redemption. (*Id.*) She did so, and within a week she received a letter from BTC stating that the bond was void. (*Id.* at 25.)

As a result of the letter from BTC, Hoffman states, "I was really disappointed about ... [the bonds], so I took them out back and threw them in the air. That's why I know it was March, because it was very windy and they blew all over the place. I had enough of it." (*Id.* at 27.) Apparently, however, Hoffman's son had not. He gathered up the Hawaiian bonds with a face value of nearly a quarter of a million dollars and returned them to his mother, who "threw them back in a drawer...." (*Id.*)

The bonds lay dormant for almost four years. In January of 1994, Hoffman again contacted Patsy Green and asked her to investigate the worth of the bonds. She delivered some twenty-one of the bonds to Green. (*Id.* at 28–29.) Green inquired with BTC regarding the status of the bonds, and in a letter dated June 28, 1994, BTC advised Green that the bonds were "verified as outstanding and may be sent in for redemption." The June 28 letter went on to specify certain standard forms which had to be completed in order to accomplish redemption, and it directed her to submit the bonds along with the specified documentation to BTC. (Complaint, Exhibit 19.) In July of 1994, Green notified Hoffman of the substance of BTC's June 28 letter. Shortly afterward, Plaintiff completed the necessary forms and delivered them to Green, who in turn sent the bonds and documents to BTC. (*Id.*) There is no indication that in the course of Hoffman's third pass at BTC it was appraised of how Hoffman acquired the bonds, of Hoffman's previously unsuccessful attempt to redeem one of the garbage station bonds, or of the BTC security agent's prior instruction that Hoffman immediately deliver the bonds to BTC's security department.

On July 25, 1995, Plaintiff received a check from BTC dated July 22, 1995 for

$105,000.00. She deposited the check in her personal account the same day, and in the ensuing four days she spent approximately $47,000.00, principally on retiring existing debt and the purchase of two automobiles. (*Id.* at 34–37; Complaint at ¶ 19.) On July 28, 1995, BTC refused to honor the check. (Complaint at ¶ 11.) Hoffman's bank apparently received the returned check on July 29, 1995, and notified her the same day. (Hoffman Dep. at 32, 37.)

Thereafter, Hoffman made an inquiry to the Pennsylvania Securities Commission regarding the status of the bonds. She was informed that the bonds had been redeemed in February of 1986. (*Id.* at 66–69.)

In February of 1995, Plaintiff filed a two count complaint against BTC claiming breach of contract and either intentional, reckless, or negligent infliction of emotional distress.

## II. *Discussion*

### A. *Summary Judgment Standard*

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party establishes that there is no genuine issue of material fact that can be resolved at trial and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Materiality is determined by the substantive law that governs the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute is genuine only if a reasonable jury could return a verdict for the nonmoving party. *Id.* Following a determination that no genuine dispute of material facts exists, the moving party must demonstrate that it is entitled to judgment as a matter of law. Once the moving party has made and supported its motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

### B. *Count I—Breach Of Contract*

Plaintiff contends that BTC's June 28, 1995 letter and/or the $105,000.00 check, along with Plaintiff's delivery of the bonds and supporting documentation to BTC, constitute a binding contract. She maintains that BTC breached this contract by failing to honor the $105,000.00 check. In addition, in her complaint Plaintiff claims that she justifiably and detrimentally relied on BTC's "promises" and its issuance of the $105,000.00 check. Finally, Plaintiff asserts in her complaint that BTC is estopped from defending against the contract claim on the ground of lack of consideration.

BTC argues, among other things, that no contract was formed due to a failure of consideration. Additionally, it argues that Plaintiff did not detrimentally rely on the issuance of the $105,000.00 check.

■ In Plaintiff's opposition brief she does not raise the estoppel argument regarding lack of consideration, and the complaint itself gives no hint of the basis for the claim. Likewise, Plaintiff entirely fails to brief her justifiable reliance claim or address in any way Defendant's argument that summary judgment should be granted with respect to it. Consequently, Plaintiff's estoppel and justifiable reliance claims are deemed abandoned. The only issue the court must resolve to dispose of BTC's motion for summary judgment with respect to Count I is whether its failure of consideration defense to Plaintiff's breach of contract claim succeeds.

■ It is settled that failure of consideration is a valid defense to breach of contract. *Resolution Trust Corporation v. Forest Grove, Inc.*, 33 F.3d 284, 292 (3d Cir.1994). " 'Failure of consideration occurs when the consideration bargained for does not pass, in whole or in part, to the promisor.' " *Resolution Trust*, 33 F.3d at 292 (quoting *McGuire v. Schneider, Inc.*, 368 Pa.Super. 344, 534 A.2d 115, 118 (1987), *aff'd without opinion*, 519 Pa. 439, 548 A.2d 1223 (1988) (per cu-

riam)). Indeed, the definition of consideration is, essentially, that which is bargained for. *See* Restatement (Second) of Contracts § 71(1) and (2) (1981) ("To constitute consideration, a performance or return promise must be bargained for.... A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise....").

■ Here, BTC has introduced overwhelming evidence that the bonds at issue were worthless when Plaintiff found them, portentously, at the Jersey City dump. (*See* Reply Brief, Exhibits 1–5.) Plaintiff has offered no contrary evidence. Accordingly, the court finds that the bonds were worthless when Plaintiff submitted them to BTC for redemption.

Plaintiff maintains that the fact of worthlessness is insufficient to establish lack of consideration. She claims that "the tender of bond certificates constituted consideration for the payment without regard to whether or not those certificates would have some independent value to the defendant." (Opposition Brief at 17.) This argument is at odds with the law set forth above, and Plaintiff points to no authority in support of her rather unorthodox view of consideration.

■ The germane inquiry under controlling standards is what BTC sought in exchange for its alleged promise to pay Plaintiff $105,000.00. If it sought the bonds merely as objects regardless of their pecuniary worth, Plaintiff is correct that there is no failure of consideration. Conversely, if BTC sought twenty-one valid bonds, redeemable with the Hawaiian government at their face value of $5000 each, then the delivery of worthless bonds in their stead would constitute a substantial failure of the bargained for consideration. The former proposition is preposterous on its face, and Plaintiff offers no theory of BTC's motives or other explanation which would permit a reasonable jury to believe it. The court must therefore conclude that Defendant's failure of consideration defense to Plaintiff's breach of contract

claim succeeds. Accordingly, Defendant's motion for summary judgment will be granted with respect to Count I.[1]

## C. *Count II—Emotional Distress*

Plaintiff asserts claims for intentional, reckless, and negligent infliction of emotional distress. She maintains that she "suffered great humiliation, embarrassment, mortification, distress, and inconvenience ..." as a result of BTC's conduct, apparently due to her inability to meet the obligations which she incurred between July 25 and 29, 1995. Neither party discussed the emotional distress claims in their briefs. However, because the claims must fail as a matter of law, the court will dismiss them *sua sponte.*

■ Pennsylvania courts have expressly declined to recognize the tort of negligent infliction of emotional distress. *Jackson v. Sun Oil Company of Pennsylvania,* 361 Pa.Super. 54, 521 A.2d 469, 471 (1987) (citing *Pierce v. Penman,* 357 Pa.Super. 225, 515 A.2d 948, 951 (1986)). Nothing more need be said before dismissing this claim.

■ The torts of intentional and reckless infliction of emotional distress are recognized under Pennsylvania law. *Jackson,* 521 A.2d at 471; *Pierce,* 515 A.2d at 951. However, liability will only be found for these torts where the alleged tortfeasor's offending conduct is "extreme and outrageous." *Id.* The standard for finding extreme and outrageous conduct in Pennsylvania is quite difficult to meet:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

---

1. Alternatively, consideration in this case fails because purported consideration which is merely nominal cannot support a contract. *See* Restatement (Second) of Contracts § 71, Comment (b) (1981).

**320**

community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Pierce*, 515 A.2d at 951 n. 3 (citation omitted).

 In the present case, Plaintiff has presented no evidence suggesting that BTC intentionally sent her a check for $105,000.00 in exchange for the junk yard bonds. Indeed, the record indicates that the error as to whether the bonds were outstanding was made by the Department of Budget and Finance of the State of Hawaii, who provided false information to BTC upon BTC's inquiry. (*See* Reply Brief, Exhibit 4.) At most, BTC can be charged with a careless failure to head-off its issuance of the check once the State of Hawaii notified it of the mistake on July 8, 1995, two weeks before the check was dated. (*Id.*) While the court does not wish to make light of Plaintiff's emotional distress, as a matter of law, BTC's carelessness does not rises to the level of "extreme and outrageous" as interpreted by Pennsylvania courts. Accordingly, Plaintiff's intentional and reckless infliction of emotional distress claims must be dismissed.

**D.  *Plaintiff's Motion To File Sur-Reply***

 In its motion for summary judgment and supporting brief, BTC treated the worthlessness of the bonds as a foregone conclusion in view of Plaintiff's testimony that she independently confirmed the fact through the Pennsylvania Securities Commission. In her opposition brief, Plaintiff contends that BTC failed to establish that the bonds were worthless. BTC, in reply, submitted overwhelming evidence establishing that the bonds were redeemed in 1986, well before Plaintiff found them. Plaintiff seeks leave of the court to file a sur-reply brief. She does not propose to introduce evidence that the bonds were valid when delivered to BTC. Rather, she seeks to argue that BTC's decision to send her a check for $105,000.00 in exchange for the worthless remains of previously redeemed bonds was not a mistake. Given the present record, the court does not believe that any such argument will affect its analy-

sis. Consequently, the motion to file a sur-reply brief will be denied. If Plaintiff believes after reading this memorandum that additional argument can repair what appears to be an irredeemable case, she may place it before the court with a motion for reconsideration, provided that it meets the standards for such a motion. The court is skeptical, to say the least.