592 A.2d 698

**Beverly STRAIN and Bernard Strain, Husband and Wife, Appellants,**

**v.**

**Joseph S. FERRONI, M.D., and Daniel C. Harrer, M.D., Appellees. (Two Cases)**

Superior Court of Pennsylvania.

Argued March 6, 1991.

Filed June 7, 1991.

350

Nancy H. Fullam, Philadelphia, for appellants.

Dorothy Duffy, Plymouth Meeting, for appellee Ferroni.

Joan S. Adams, Philadelphia, for appellee Harrer.

Before BECK, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is a consolidated appeal from two orders entered in the Court of Common Pleas of Philadelphia County granting summary judgment in favor of Daniel C. Harrer, M.D. and Joseph S. Ferroni, M.D. We affirm.

The instant appeal is a result of litigation instituted by the appellants Beverly and Bernard Strain against Dr. Harrer for negligence in failing to take actions to prevent Beverly Strain's miscarriage. *See* Appellants' Complaint. After discovery, Dr. Harrer moved for summary judgment arguing that there existed no genuine issues of material fact relative to the Strains' negligence claim. Additionally, Dr. Harrer contested the Strains' allegations that his conduct intentionally or negligently caused them emotional distress. The trial court found in favor of Dr. Harrer and entered summary judgment on June 25, 1990.

Similarly, the Strains filed a complaint against Dr. Ferroni, Beverly Strains' obstetrician-gynocologist, asserting that he was vicariously liable for the acts of his covering physician, Dr. Harrer. The Strains seek to hold Dr. Ferroni accountable for Dr. Harrer's actions based on the theory of agency. Dr. Ferroni filed a motion for summary judgment which was granted on August 17, 1990. The Strains' appeals from both orders of the trial court were consolidated and certified to this Court.

The record indicates that Beverly Strain, a patient of Dr. Ferroni, awoke with severe back pain and cramping on the morning of May 5, 1985. At the time, she was in her fourth month of pregnancy. Dr. Ferroni was not available that day, and Mrs. Strain's call was received by Dr. Harrer who was providing coverage for Dr. Ferroni. Dr. Harrer advised Mrs. Strain to maintain strict bed rest and to call him again if her symptoms changed. Mrs. Strain began to pass small blood clots. She called Dr. Harrer who returned her call within ten to twenty minutes. He again told her to maintain strict bed rest.

Mrs. Strain stated that over the course of the day, a series of phone calls ensued during which she attempted to arrange for the doctor to see her. She felt that he should have performed a physical examination and attempted to save the pregnancy.

Later that evening, the bleeding increased and Mrs. Strain experienced abdominal pain and cramps. Dr. Harrer

told her that a miscarriage had begun. Mrs. Strain called an ambulance and went to Roxborough Memorial Hospital. Dr. Harrer called Mrs. Strain to check her status and was informed by Mr. Strain that they were on their way to the Roxborough hospital.

Mrs. Strain was diagnosed as having experienced post-spontaneous miscarriage. The treating physician performed a dilation and evacuation. Mrs. Strain was released the following day.

On appeal, the Strains contend that Dr. Harrer negligently failed to render the appropriate standard of medical care under the circumstances. They also allege intentional and negligent infliction of emotional distress. In particular, they assert that Dr. Harrer misdiagnosed her condition and refused to provide treatment. They allege that Mrs. Strain suffered damages in the form of "increased blood loss, passage of clots, loss of consciousness, physical collapse, emergency surgery, anemia and generalized lethargy." Appellants' brief, October 23, 1990, at 5. Regarding the issues of emotional distress, the Strains contend that the "callous indifference shown by Dr. Harrer in the face of the known risk of death from hemorrhage was in reckless [disregard] to the rights and safety" of Beverly Strain. *Id.* at 5-6.

The Strains also suggest that Dr. Harrer's alleged negligence should have been imputed to Dr. Ferroni because Dr. Harrer was an agent of Dr. Ferroni. They believe that the trial court erred in finding in favor of Dr. Ferroni, asserting that "[t]he basis for imposing liability upon Dr. Ferroni was his principal-agent relationship with Dr. Harrer whom he retained to provide coverage through his service in his absence." Appellants' brief, January 15, 1991, at 6.

While this Court is sympathetic to Mrs. Strain's situation, we cannot conclude that she has sustained her burden of proving a prima facie case for any of the causes of action set forth in her complaint. Our reasoning follows.

At the onset, we note our scope and standard of review in considering an appeal from the grant of a motion for

summary judgment. In *Vargo v. Hunt*, 398 Pa.Super. 600, 581 A.2d 625 (1990), this Court stated:

> A determination of whether the grant or denial of a motion for summary judgment is to be upheld requires an appellate court to decide whether the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Overly v. Kass*, 382 Pa.Super. 108, 554 A.2d 970, 971 (1989); see also *Chiricos v. Forest Lake Council Boy Scouts of America*, 391 Pa.Super. 491, 571 A.2d 474, 475 (1990). In making such a finding, we must accept as true all properly pleaded facts, as well as all reasonable inferences which might be drawn therefrom. Furthermore, we shall not disturb the trial court's ruling unless there has been an error of law or a manifest abuse of discretion. *Overly v. Kass*, supra.

*Id.*, 398 Pa.Superior Ct. at 601, 581 A.2d at 626. *See also Lower Lake Dock Co. v. Messinger Bearing Corp.*, 395 Pa.Super. 456, 461, 577 A.2d 631, 634 (1990); *Bobb v. Kraybill*, 354 Pa.Super. 361, 364, 511 A.2d 1379, 1380 (1986). Any party may move for summary judgment after the pleadings are closed. Pa.R.Civ.P. 1035. We note, however, that although we must examine the record in the light most favorable to the non-moving party, "the non-moving party may not rest upon the mere allegations and denials of his pleadings. To avoid summary judgment, the non-moving party must set forth specific facts by way of affidavit, or as otherwise provided in [Pa.R.Civ.P.] 1035, demonstrating that a genuine factual issue exists." *Curran v. Children's Service Center of Wyoming County, Inc.*, 396 Pa.Super. 29, 30, 578 A.2d 8, 9 (1990). *See also Jackson v. Sun Oil Co. of Pennsylvania*, 361 Pa.Super. 54, 521 A.2d 469 (1987). With these standards in mind, we will review the Strains' appellate issues.

■ The Strains contend that Dr. Harrer committed medical malpractice by misdiagnosing Mrs. Strain's condition and by improperly treating her. *See* Appellants' Complaint. To prove a prima facie case, it was incumbent upon

the Strains to produce expert testimony to establish the recognized standard of medical care attributable to physicians under like circumstances. *Tarter v. Linn,* 396 Pa.Super. 155, 578 A.2d 453 (1990); *Lira v. Albert Einstein Medical Center,* 384 Pa.Super. 503, 559 A.2d 550 (1989). In *Chandler v. Cook,* 438 Pa. 447, 451, 265 A.2d 794, 796 (1970), the Pennsylvania Supreme Court expressly held: "... in malpractice cases ... a jury will not be permitted to find negligence without expert testimony to establish variance from accepted medical practice." Thus, as well, it must be shown that the doctor whose conduct is being challenged departed from the requisite standard when s/he treated the patient. *Tarter v. Linn, supra; Freed v. Priore,* 247 Pa.Super. 418, 372 A.2d 895 (1977). *See also Brophy v. Brizuela,* 358 Pa.Super. 400, 517 A.2d 1293 (1986).

■ The Strains employed only one expert, Dr. Kenneth Kappy. In pertinent part, Dr. Kappy's report provides: The patient's questions revolve around the management of the spontaneous miscarriage in 1985. *I do not believe that the earlier admission of this patient would have markedly changed the medical outcome.* However, a comment should be made regarding the statements that are made in the deposition of Ms. Strain. I specifically make reference to the events that she says occurred on the day of her admission. Apparently there were a number of phone calls placed back and forth between Dr. Harrer and the patient. She states that she had excessive bleeding with a passage of clots vaginally, along with increasing amounts of cramping. I believe that appropriate medical management would have suggested an examination of Ms. Strain during that time, since cramping and excessive bleeding would be signs of an *impending miscarriage,* which would require the removal of the products of conception *to minimize the potential morbidity that is associated with miscarriage,* namely excessive blood loss. *This would not alter the final outcome of pregnancy,* but it would have diminished the amount of

anxiety experienced by Ms. Strain and would have allowed earlier recognition and treatment of her medical problem. Concerning the surgical findings at the repeat cesarean section in July of 1986, the operative report gives no evidence of abnormal findings. [....] The finding of a thin uterine segment after a cesarean section is not unusual despite the fact that it is not very common. *I do not believe that it represents any indication of inappropriate medical management.*

Expert report, May 12, 198[ ], at 1–2 (emphasis added). Dr. Kappy established that Mrs. Strain's miscarriage could not have been avoided. His expert report contains no opinion as to whether Dr. Harrer breached the requisite standard of medical care.[1] At best, the report indicates that Dr. Harrer could have acted more promptly; however, there is no evidence that Dr. Harrer's conduct caused the termination of Mrs. Strain's pregnancy. *See Hamil v. Bashline,* 481 Pa. 256, 265, 392 A.2d 1280, 1284 (1978) ("[t]he defendant's negligent conduct may not ... be found to be a substantial cause where the plaintiff's injury would have been sustained even in the absence of the actor's negligence."); *Lambert v. Soltis,* 422 Pa. 304, 221 A.2d 173 (1966) (negligence can not be inferred merely because the patient's treatment was unsuccessful). *See Jones v. Montefiore Hospital,* 494 Pa. 410, 431 A.2d 920 (1981) (there must be a causal link between the alleged negligence and the alleged harm); *Henry v. McCrudden,* 133 Pa.Commw. 231, 575 A.2d 666 (1990) (accord).

Similarly, a review of the record reveals that Dr. Harrer told Mrs. Strain that she might suffer a miscarriage. N.T., Deposition of Beverly Strain, March 18, 1987, at 117. Dr. Ferroni testified that he was confident in Dr. Harrer's abilities (N.T., Deposition of Dr. Ferroni, December 3, 1987, at 82) and that he "may have apologized [to Mrs. Strain]

---

1. More basically, Dr. Kappy does not set forth the appropriate standard of care recognized by the medical profession in the community applicable to Mrs. Strain's circumstances, let alone posit that Dr. Harrer provided treatment in a manner inconsistent with that standard or in an incompetent fashion.

and told her that [he] was sorry she had a miscarriage, which [he] often [did], but not for Dr. Harrer's care." *Id.* at 96.

Dr. Posatko, the physician who treated Mrs. Strain at Roxborough Memorial Hospital, stated at his deposition that there was no medicine available that would have stopped the miscarriage. N.T., Deposition of Dr. Posatko, at 50. The record is devoid of any evidence to the contrary.

Most interestingly, in the Strains' Answer in Opposition to Dr. Harrer's Motion for Summary Judgment, the Strains "concede that the expert report of Dr. Kenneth Kappy does not offer an opinion to a reasonable degree of medical certainty, as is required by Pennsylvania law to present a prima facie case of medical negligence, regarding the issue whether Dr. Harrer's medical negligence caused or contributed to the loss of this pregnancy. Accordingly, that claim can not and will not be pursued by plaintiffs at trial." *Id.* at para. 6. *See also id.* at paras. 8, 9. *Cf. id.* at para. 13. *See also* Strains' Memorandum of Law in Opposition to Dr. Harrer's Motion for Summary Judgment, at 2.

It is clear that Mrs. Strain suffered injury as a result of her miscarriage. However, we cannot discern from the record any injury that occurred or that was causally attributable to the allegedly negligent conduct of Dr. Harrer. *Corbett v. Weisband,* 380 Pa.Super. 292, 551 A.2d 1059 (1988); *see Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978).

In sum, this Court finds no genuine issue of material fact to be resolved regarding this claim. Conversely, the Strains have failed to satisfy their burdens of proof. The expert opinion rendered by Dr. Kappy does not establish that Dr. Harrer was negligent. Dr. Kappy does not suggest that Dr. Harrer deviated from a requisite standard of care. *See Brophy v. Brizuela,* 358 Pa.Super. 400, 405, 517 A.2d 1293, 1296 (1986). To the contrary, Dr. Kappy's review of the facts and history of this case led him to opine that Dr. Harrer's conduct did not culminate in Mrs. Strain's miscar-

riage. Mrs. Strain's loss was unpreventable.[2] For these reasons, we must affirm the trial court's grant of Dr. Harrer's motion for summary judgment on this point.

Beverly Strain lost a great deal of blood as a result of her miscarriage. *Cf.* N.T., Deposition of Dr. Posatko, at 18, 40. She attributes the blood loss, the passage of clots, her physical collapse and general lethargy following the incident, her anemic condition and her emotional injury to the "outrageous conduct" of Dr. Harrer. She states that she risked hemorrhage and death due to Dr. Harrer's behavior. The Strains seek to reverse the trial court's determination that there was no issue of material fact regarding the Strains' claim for negligent infliction of emotional distress.

The law in this area is established. Damages for negligent infliction of emotional distress will not be awarded absent a physical manifestation of the emotional distress. *Wall by Lalli v. Fisher,* 388 Pa.Super. 305, 565 A.2d 498 (1989); *Boarts v. McCord,* 354 Pa.Super. 96, 511 A.2d 204 (1986). *See* Restatement (Second) of Torts, § 436A. *See Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 128, 437 A.2d 1236, 1239 (1981) (discussing Restatement (Second) of Torts § 436A). Here, there is no evidence that Mrs. Strain experienced physical injury attendant to her distress. Even viewing the record in the light most favorable to Mrs. Strain, there is no testimony to the effect that any bodily impairment sustained by Mrs. Strain could be associated with the psychological pain inflicted upon her by Dr. Harrer.

The Strains demand recovery for intentional infliction of emotional distress as well. While we do not dispute that Dr. Harrer's language may have been harsh and/or insensitive [3] and while we recognize the Strains' complaint that Dr.

2. We do not discount evidence that Mrs. Strain suffered injury as the incidental result of miscarrying a child, but, there is no indication that the actions of Dr. Harrer causally resulted in her condition.

3. The Strains assert that Dr. Harrer said to Beverly Strain, "if you lose it, you lose it," with reference to her unborn child. *See* Appellants' brief, October 23, 1990, at 5; N.T., Deposition of Beverly Strain,

Harrer should have been more attentive to her situation, we nevertheless must reject the Strains' claim regarding this issue. As Dr. Harrer correctly notes, although this Court has discussed the theory behind the cause of action for intentional infliction of emotional distress, the Restatement (Second) of Torts § 46 definition has never been expressly adopted in this Commonwealth. *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988 (1987). *Baker v. Morjon, Inc.*, 393 Pa.Super. 409, 574 A.2d 676 (1990). *See Daughen v. Fox*, 372 Pa.Super. 405, 539 A.2d 858 (1988).

■ In *Ford v. Isdaner*, 374 Pa.Super. 40, 542 A.2d 137 (1988), this Court reiterated the standard identified in *Kazatsky, supra.* necessary to establish a cause of action for intentional infliction of emotional distress. *Kazatsky* "require[d] allegations of an emotional injury due to a tortfeasor's 'outrageous' conduct." *Ford v. Isdaner, supra*, 374 Pa.Superior Ct. at 45, 542 A.2d at 139. Our courts have consistently held that in order to sustain a claim for emotional distress of this ilk, the critical inquiry is whether the conduct at issue was extreme and outrageous.[4] In *Kazatsky, supra*, our supreme court further explained:

March 18, 1987, at 128, 135. *Cf.* N.T., Deposition of Dr. Harrer, November 4, 1986, at 28.

**4.** The Restatement (Second) of Torts § 46, Comment "d" reads, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Jones v. Nissenbaum, Rudolph & Seidner*, 244 Pa.Super. 377, 383, 368 A.2d 770, 773 (1976) (discussing Restatement (Second) of Torts § 46). *See Field v. Philadelphia Elec. Co.*, 388 Pa.Super. 400, 565 A.2d 1170 (1989) (same); *Reimer v. Tien*, 356 Pa.Super. 192, 514 A.2d 566 (1986) (same); *Cloverleaf Development, Inc. v. Horizon Financial F.A.*, 347 Pa.Super. 75, 500 A.2d 163 (1985) (same); *Lazor v. Milne*, 346 Pa.Super. 177, 179, 499 A.2d 369, 370 (1985) (it is for the court to determine in the first instance whether conduct is so extreme or outrageous as to permit recovery); *see Motheral v. Burkhart*, 400 Pa.Super. 408, 583 A.2d 1180 (1990) (reiterates same principle). *See Hoffman v. Memorial Osteopathic Hospital*, 342 Pa.Super. 375, 492 A.2d 1382 (1985) (discusses "intent").

It is basic to tort law that an injury is an element to be proven. Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered the claimed distress. Moreover, the requirement of some objective proof of severe emotional distress will not present an unsurmountable [sic] obstacle to recovery. Those truly damaged should have little difficulty in procuring reliable testimony as to the nature and extent of their injuries. We therefore conclude that if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence.

*Id.*, 515 Pa. at 197, 527 A.2d at 995.

■ After a review of the record, we are convinced that the trial court properly entered summary judgment in favor of Dr. Harrer relative to this issue. At the very most, we cannot find that any of the above elements were satisfied under the facts of this case.[5] *See also* Dr. Harrer's brief, at 16–18. More basically however, we must agree with Dr. Harrer that Pennsylvania case law indicates that a claim will not be cognizable under Section 46 of the Restatement of Torts where the negligence of a party forms the basis of a claim. *Jackson v. Sun Oil Co. of Pennsylvania*, 361 Pa.Super. 54, 59, 521 A.2d 469, 471 (1987). We find no error in the trial court's grant of summary judgment in favor of Dr. Harrer.

■ As for Dr. Ferroni, there is no evidence in the record which would allow us to conclude that Dr. Harrer was his agent. A principal may be held vicariously responsible for the acts of his agent where the principal controls the manner of performance and the result of the agent's work.

**5.** In terms of the emotional distress itself, Mrs. Strain stated that she did not seek psychological or psychiatric counseling following the miscarriage. N.T., Deposition of Beverly Strain, March 18, 1987, at 228–29. *See Kazatsky, supra.*

*Moon Area School District v. Garzony,* 522 Pa. 178, 560 A.2d 1361 (1989); *see id.* at 189 n. 8, 560 A.2d at 1367 n. 8. *See George v. Nemeth,* 426 Pa. 551, 233 A.2d 231 (1967). *See Yorston v. Pennell,* 397 Pa. 28, 153 A.2d 255, 259–60 (1959) (distinguishes the right to control from the right to supervise). In *Yorston, supra,* the Pennsylvania Supreme Court wrote:

Physicians and surgeons, like other persons, are subject to the law of agency and a physician may be at the same time the agent both of another physician and of a hospital even though the employment is not joint. [Citation omitted.] In determining whether a person is the servant of another it is necessary that he not only be subject to the latter's control or right of control with regard to the work to be done and the manner of performing it but that this work is to be performed on the business of the master or for his benefit. [Citation omitted.] Actual control, of course, is not essential. It is the right to control which is determinative. On the other hand, the right to supervise, even as to the work and the manner of performance, is not sufficient; otherwise a supervisory employee would be liable for the negligent act of another employee though he would not be the superior or master of that employee in the sense the law means it. [Citations omitted.]

*Id.,* 397 Pa. at 39, 153 A.2d at 259–60.

■ The record is devoid of indication that Dr. Ferroni exercised any control over Dr. Harrer. Rather, the record reflects Dr. Ferroni's confidence in Dr. Harrer's abilities.[6] Dr. Harrer merely was covering for Dr. Ferroni on the weekend in question. As Dr. Ferroni points out, he was not consulted nor in any way involved in Mrs. Strain's medical care on the day of her miscarriage. Dr. Harrer was not required to seek Dr. Ferroni's guidance before administering medical care or before offering medical advice. *See* Dr. Ferroni's brief, at 11–13. Conversely, Dr. Harrer, as a

6. Moreover, Dr. Harrer is licensed to practice medicine and his license is independent from that of Dr. Ferroni.

covering physician, was at liberty to use his judgment in treating a patient. His responsibilities were not subject to oversee by Dr. Ferroni. *See* N.T., Deposition of Dr. Harrer, November 4, 1986, at 12, 34, 35.

We are compelled to agree with Dr. Ferroni's argument, as follows:

Dr. Harrer, as a covering doctor, was free to use his own discretion, knowledge, and skill in the care of the patient, without any control, interference or input from Dr. Ferroni. Dr. Harrer had exclusive control over the manner of care. The undisputed facts clearly indicate that Dr. Ferroni was not an "employer" or "superior" of Dr. Harrer. Because he was not subject to control by Dr. Ferroni and, further, because he had exclusive control over the manner of performance of the care he rendered, Dr. Harrer was an independent contractor and the conduct of Dr. Harrer, pursuant to Pennsylvania law, imposes no liability on Dr. Ferroni. *See Ortiz v. Ra–El Development Corp.*, 365 Pa.Super. 48, 528 A.2d 1355 (1987). *Green v. Independent Oil Company*, 414 Pa. 477, 201 A.2d 207 (1964).

Dr. Ferroni's brief, at 11.

The record indicates that Dr. Harrer did not contact Dr. Ferroni for advice on any kind of regular basis. N.T., Deposition of Dr. Harrer, November 4, 1986, at 35. He did not consult with him regarding patients except under certain limited circumstances. *Id.* at 21–22; 34–35. He did not seek Dr. Ferroni's approval before engaging in the practice of medicine. Most basically, the nature of the professional relationship shared by Drs. Ferroni and Harrer is not the type of arrangement contemplated by the cases which deal with principal-agency law. We can not impute to Dr. Ferroni any liability for Dr. Harrer's actions.

Since the only issue of fact (that Dr. Harrer and Dr. Ferroni maintained a coverage agreement) is not in dispute, the trial court had only a matter of law to resolve. *See* Trial court opinion, November 20, 1990, at 3. *Melmed v. Motts*, 341 Pa.Super. 427, 491 A.2d 892 (1985). The trial

court found that Dr. Ferroni did not control or supervise Dr. Harrer; nor did Dr. Ferroni maintain those rights. More specifically, the trial court held that the Strains "failed to establish any employment relationship between defendants Ferroni and Harrer." Trial court opinion, November 20, 1990, at 4. Based on the record before us, we will not disturb the trial court's conclusion.

Finally, we note the following. Because we determined that Dr. Harrer was rightly granted summary judgment in this litigation, the underlying claims incident to the complaint lodged against Dr. Ferroni are null and void. Finding no merit to the Strains' inquiries on appeal, we affirm the trial court's orders granting summary judgment in favor of Dr. Ferroni and Dr. Harrer.

Orders affirmed.