J-A06039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ESSA BANK AND TRUST, SUCCESSOR TO FIRST STAR BANK F/K/A/ FIRST STAR SAVINGS BANK | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL J. CERAMI AND UNITED STATES OF AMERICA INTERNAL REVENUE SERVICE | |
| APPEAL OF: MICHAEL J. CERAMI | |
| Appellant | No. 1632 EDA 2014 |

Appeal from the Judgment Entered June 20, 2014
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2009-C-5427

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                  **FILED MARCH 24, 2015**

Appellant Michael Cerami entered into a commercial loan with First Star Bank which was secured with a mortgage on Cerami's residential property.  When Cerami defaulted on the loan, ESSA Bank, the successor to First Star Bank, filed this mortgage foreclosure action.  Cerami asserted in his defense that First Star Bank fraudulently induced him to enter into the loan.

Following a bench trial, the trial court entered a verdict in favor of ESSA Bank in the amount of $833,855.17 for foreclosure and sale of the mortgaged premises.  Cerami filed post-verdict motions seeking judgment

1

n.o.v. on the ground that the evidence demonstrated First Star Bank's fraud as a matter of law. The trial court denied Cerami's post-verdict motions, and this appeal followed. [1,2]

We conclude that Cerami waived his right to seek judgment n.o.v. by failing to move for a compulsory nonsuit or directed verdict during trial. Even if Cerami preserved this issue for appeal, the evidence, construed in the light most favorable to ESSA Bank, fails to establish Cerami's affirmative defense of fraud. Finally, the trial court properly excluded evidence relating to a separate loan that Cerami obtained from First Star Bank. Accordingly, we affirm.

Cerami raises two arguments in this appeal:

1. Where the trial court's findings that appellee's false representations were not material to the taking of the loan or the proximate cause of the default are not supported by the record, but refuted, and, are based upon mere speculation and conjecture, judgment should be entered in favor of appellant.

2. The trial court erred in excluding relevant evidence pertaining to the materiality of

---

[1] Following Cerami's appeal, Essa Bank filed a praecipe reducing the verdict to judgment, thus perfecting this appeal in accordance with Pa.R.A.P. 905(a)(5).

[2] The trial court did not request a Pa.R.A.P. 1925(b) statement from Cerami and did not issue a Pa.R.A.P. 1925(a) opinion. The trial court did, however, issue a detailed memorandum at the time of the verdict which included extensive findings of fact and conclusions of law. This memorandum more than adequately facilitates our review of this appeal.

> appellee's false representations and the proximate
> cause of appellant's default.

In his first argument, Cerami claims that the trial court erred in denying him judgment n.o.v. There are two bases on which the court can grant judgment n.o.v.:

> [O]ne, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Polett v. Public Communications, Inc.,* 83 A.3d 205, 212 (Pa.Super.2013). In an appeal from the trial court's decision to deny judgment n.o.v.,

> we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

*Id*. at 211. To preserve the right to request judgment n.o.v. subsequent to the verdict, the appellant must either (1) move orally for a compulsory

nonsuit at the close of the plaintiff's case or (2) move orally or in writing for a directed verdict at the close of evidence. Pa.R.Civ.P. 230.1(a)(1) (compulsory nonsuit); Pa.R.Civ.P. 226(b) (directed verdict). This procedure applies to bench trials. **Drake Manufacturing Co., Inc. v. Polyflow, Inc.**, --- A.3d ----, 2015 WL 302266, *4 (Pa.Super., January 23, 2015).

Here, Cerami failed to move orally for a compulsory nonsuit or directed verdict. Nor did he move for a directed verdict in writing. Thus, Cerami waived his right to seek judgment n.o.v. in this appeal.[3,4] **Drake Manufacturing Co.**, **supra**, 2015 WL 302266, at *4.

Even if Cerami preserved his right to seek judgment n.o.v., the evidence does not establish his defense of fraud. Construed in the light most favorable to Essa Bank, the evidence is as follows: Cerami initially obtained a construction loan from First Star in the amount of $1,000,000

---

[3] Prior to the verdict, Cerami filed a "post-trial brief" in which he presented his defense of fraud with citations to the trial transcript. The law is unclear whether a "post-trial brief" can ever serve as a substitute for a motion for directed verdict. It is clear in this case, however, that Cerami's post-trial brief was not the equivalent of a motion for directed verdict. Cerami's brief construed the evidence in the light most favorable to himself instead of in the light most favorable to Essa Bank, the requisite standard for motions for directed verdict. **Polett**, **supra**, 83 A.3d at 212.

[4] Although ESSA Bank does not argue that Cerami waived this issue, we have the authority to declare waiver *sua sponte*. **Majorsky v. Douglas**, 58 A.3d 1250, 1266 (Pa.Super.2012) (citing, *inter alia*, **Tarter v. Linn**, 578 A.2d 453 (Pa.Super.1990)) ("the appellate court may *sua sponte* refuse to address an issue raised on appeal that was not raised and preserved below....").

pursuant to an agreement dated March 18, 2003. Exhibit D-15. Cerami used the proceeds of this loan to acquire properties known as 523-535 Second Avenue and 526 Third Avenue in Bethlehem, Pennsylvania ("the Properties") with the intention of converting them into an 18-unit apartment building and adjoining parking spaces. *Id*. Cerami was the general contractor for the project. *Id*. Subcontractors who performed work on the project sent their bills to Cerami's post office box in Zionsville, Pennsylvania or the construction project site. N.T., Vol. I, pp. 31-32; exhibits P-10, P-11.

By August 2004, First Star Bank had advanced the entire proceeds of the initial loan to Cerami, but the project was not complete. Exhibit D-15. Cerami requested that First Star Bank loan him an additional $815,000, raising the principal amount of the loan to $1,815,000 ("First Amended Construction Loan"). *Id*. Cerami, in his capacity as general contractor, agreed to complete the improvements in accordance with the plans and specifications and the revised budget. *Id*. On August 18, 2004, Cerami entered into an Amended and Restated Promissory Note in the amount of $1,815,000, and pledged as collateral first lien mortgages to First Star on the Properties and on other properties that he owned. *Id*.

In July 2005, the project was still not complete, even though First Star had advanced the entire proceeds of the First Amended Construction Loan. Exhibit D-6. Cerami again informed First Star that the project required additional funding. Although Cerami was several months in arrears on the

First Amended Construction Loan, First Star Bank believed that Cerami could complete the Project if it loaned him additional money because the Property would provide a cash flow that would enable him to pay the debt. N.T. Vol. I, p. 25. Thus, on July 6, 2005, First Star Bank sent Cerami a commitment letter to lend an additional $430,000 ("Second Construction Loan") subject to specific terms set forth in the document. N.T. Vol. II, p. 30; Exhibit D-3. The commitment letter stated that $75,000 would be disbursed to provide interest reserves in the amount of $40,000 for the $1,815,000 First Amended Construction Loan and $35,000 for the $430,000 Second Construction Loan. Exhibit D-3.

On July 18, 2005, Cerami entered into a Second Amended and Restated Construction Loan Agreement with First Star Bank for the $430,000 Second Construction Loan. Exhibit D-12. He also executed a Second Loan Modification and Release Agreement, Mortgage, Assignment of Leases and Security Agreement to the Properties. *Id*. These documents affirmed that there were no claims, set-offs, defenses, or challenges whatsoever to the prior indebtedness, and that First Star had the right to enforce all of its legal rights to collect money rightfully due and owing to it. *Id*. Pursuant to the loan documents, if the First Amended Construction Loan defaulted, the Second Construction Loan would also be defaulted. N.T. Vol. III, p. 147. Moreover, as a "material inducement" for First Star Bank to provide the

additional funding, Cerami released any and all claims he had against First Star relating to the loans it previously had made to him.  Exhibit D-12.

Also on July 18, 2005, Cerami signed a Second Promissory Note in the amount of $430,000 secured by a second lien mortgage on the Properties, as well as other properties in Lehigh and Northampton Counties, including the residential property at 6301 Vera Cruz Road, Zionsville, Pennsylvania 18092, which is the subject of this foreclosure action.  Exhibit P-1.  Under these new loan documents, Cerami agreed to make accrued interest payments on the obligation beginning one month from July 18, 2005, with one final payment due and payable on July 18, 2006.  *Id*.

The HUD Settlement Sheet related to the Second Construction Loan includes as a "Disbursement to Others" an interest reserve held by First Star Bank in the amount of $75,000.  Exhibit D-1.  A $35,000 interest reserve would have been sufficient to pay the monthly payments on the $430,000 loan through November 2005.  N.T. Vol. I, pp. 64, 85, 108.

However, instead of allocating $35,000 from the interest reserve to pay interest on the $430,000 Second Construction Loan, as it had promised to do in its commitment letter, First State Bank used the entire $75,000 in the interest reserve to pay the $1,815,000 First Amended Construction Loan.  N.T. Vol. I, p. 66.  The bank took this step to keep Cerami out of default on this loan so that he could continue construction and begin getting rental income from the property in order to pay the interest on the smaller Second

Construction Loan. N.T. Vol. I, pp. 163-164. Because the entire $75,000 interest reserve was allocated to the First Amended Construction Loan, there was no interest reserve available for monthly interest payments on the Second Construction Loan. N.T. Vol. I, pp. 66-70.

Immediately after First State Bank funded the Second Construction Loan, Cerami defaulted on this loan, which also constituted a default on the First Amended Construction Loan. N.T., Vol. III, p. 147. On January 9, 2006, First Star Bank confessed judgment on the $430,000 Second Promissory Note. Exhibit D-27. In addition, on January 12, 2006, First Star Bank confessed judgment upon the $1,815,000 First Amended Promissory Note. Exhibit D-17. On October 16, 2009, First Star Bank initiated the instant mortgage foreclosure action against Cerami arising from his default on the Second Promissory Note.

Cerami defended against the foreclosure action on the ground that First Star Bank defrauded him by misrepresenting that it would set $35,000 aside in an interest reserve to pay monthly interest-only payments on the Second Construction Loan. Cerami testified that he would not have entered into the Second Construction Loan had he known that First Star Bank would allocate the entire interest reserve to the First Amended Construction Loan. N.T., Vol. II, pp. 99-100; N.T., Vol. III, pp. 39-43. Cerami also argued that First Star Bank defrauded him by failing to inform him that there were outstanding construction invoices at the time of closing on the Second

Construction Loan. Based on the foregoing evidence, the trial court held that Cerami satisfied only four of the six elements of fraud and therefore could not prevail on this defense. The court determined that First Star Bank (1) devoted the entire interest reserve toward the First Amended Construction Loan but misrepresented to Cerami that it would devote $35,000 in the interest reserve towards the Second Construction Loan; (2) made this misrepresentation falsely or with recklessness as to whether it was true or false; and (3) made this misrepresentation with the intent of misleading Cerami into agreeing to the Second Construction Loan. Fourth, the court determined that Cerami justifiably relied upon the misrepresentation. The court found, however, that this misrepresentation was immaterial, and that Cerami did not suffer injury as a result of relying on this misrepresentation. Consequently, the trial court entered a verdict in favor of Essa Bank and against Cerami.

A defendant in a mortgage foreclosure action may assert the affirmative defense of fraud in the inducement. *First Federal Savings & Loan Association of Pittston v. Reggie*, 546 A.2d 62, 66 (Pa.Super.1988). The elements of this defense include: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) injury proximately

caused by the reliance. ***Eigen v. Textron Lycoming Reciprocating Engine Division***, 874 A.2d 1179, 1185 (Pa.Super.2005). Each element must be proven by clear and convincing evidence. ***Yoo Hoo Bottling Co. of Pennsylvania, Inc. v. Leibowitz***, 247 A.2d 469, 470 (Pa. 1968).

We agree with the trial court that Cerami failed to prove the element of materiality. A misrepresentation is material if the party would not have entered into the agreement but for the misrepresentation. ***Eigen***, 874 A.2d at 1186. Thus, Cerami had to prove that he would not have entered into the Second Construction Loan but for First Star Bank's representation that it would use $35,000 of the interest reserve for monthly interest payments due on this loan. Construed in the light most favorable to Essa Bank, the evidence does not establish that First Star Bank's misrepresentation as to how it would use the interest reserve was material to Cerami's decision to enter into the Second Loan Agreement. Cerami would have entered into the agreement with or without the First Star Bank's misrepresentation, because the First Amended Construction Loan was already in arrears, and Cerami needed the Second Construction Loan to pay his contractors and finish the construction project without further delay. N.T. Vol. I, pp. 25, 154-155; Vol. III, pp. 96-104; Exhibits P-10; P-11. As the trial court aptly observed:

> Cerami testified that he had enough monthly income from his rental properties, including the newly-rented apartments from this Project, to pay the monthly principal and interest payments on the $1,815,000 loan. He did not, however, have the wherewithal to pay the monthly debt and continue

construction and would have had to delay the completion of the Project until revenue was generated to continue with the construction. With the $430,000 loan offer, the Bank agreed to reduce the monthly payments on the $1,815,000 loan from principal and interest to interest only. With such reduction in the monthly payments due on the $1,815,000 loan, Cerami would have had sufficient funds from his rental properties to continue to pay the monthly amounts due on the $1,815,000 loan and the additional monthly interest-only payments on the $430,000, while being afforded the opportunity to continue construction on the Project without delay. Therefore, we find it reasonable that Cerami would have been enticed to enter the agreement regardless of the $35,000 interest reserve in order to have the financial ability to complete the construction.

Trial Court Findings of Fact and Conclusions of Law, p. 15. We further observe that Cerami is not entitled to judgment n.o.v. on the basis of his testimony that he never would have entered into the Second Construction Loan had he known of First Star Bank's true intentions concerning the interest reserve. This evidence does not fit within the judgment n.o.v. calculus, which requires us to construe the evidence in the light most favorable to Essa Bank without crediting Cerami's self-serving testimony.

Nor does the evidence support Cerami's accusation that First Star Bank made a material misrepresentation by failing to inform him that there were outstanding construction invoices at the time of closing on the Second Construction Loan. The evidence shows that Cerami knew there were outstanding construction invoices, because at the time of closing on the Second Construction Loan, he asked First Star Bank to pay past due bills to

his contractors in the amount of approximately $152,000. N.T. Vol. I, pp. 154-155; Vol, III, pp. 96-104; Exhibits P-10; P-11. Even if he did not actually know about all outstanding invoices, he still should have known about them, given (1) his position as general contractor on the construction project, and (2) the fact that subcontractors sent their bills to Cerami's mailing addresses in Zionsville, Pennsylvania or the construction project site.

We also agree with the trial court that although First Star Bank acted unethically with regard to the interest reserve, Cerami failed to prove that he suffered injury as a result of First Star Bank's misconduct. The trial court correctly reasoned as follows:

> The injury at issue is the November 2005 default on the $430,000 loan which the bank is attempting to satisfy by foreclosing on Cerami's property.
>
> The default was a result of missed payments on the $430,000 loan in August, September and October of 2005. Cerami relied on the representation of the Bank that an interest reserve in the amount of $35,000 would be set aside for the $430,000 loan. Cerami contends that such an interest reserve would have prevented the default and the injury before us by providing for the monthly payments due on the $430,000 loan for the months of August, September and October of 2005. But such argument is flawed.
>
> The interest reserve was used to make past and future payments on the $1,815,000 loan. At the time the $430,000 loan was entered, the $1,815,000 loan was past due by three months. The interest reserve was used to bring the $1,815,000 loan current and to maintain monthly payments. If the $35,000 interest reserve was used as represented by the bank to pay the monthly payments on the $430,000 loan, there would have been insufficient funds in the

> interest reserve to bring the $1,815,000 loan current and maintain such status. In such a situation, the $1,815,000 loan would have been in delinquent status when the $430,000 loan was entered and the Bank would have defaulted Cerami on the larger loan. Such default on the $1,815,000 loan would have resulted in a default on the $430,000 loan, as the loan documents provided for that outcome.
>
> Accordingly, the resulting injury was not proximately caused by the reliance on the misrepresentation; the same injury was going to befall Cerami regardless of where the interest reserve was paid, just perhaps at an earlier time.

Trial Court Findings of Fact and Conclusions of Law, p. 21.

For these reasons, even if Cerami preserved his first argument for appeal, it is devoid of merit.

In his second argument on appeal, Cerami requests a new trial on the ground that the trial court excluded evidence of the two elements that the trial court said he failed to prove: the materiality of First Star Bank's misrepresentation and injury caused by this misrepresentation. We conclude that exclusion of this evidence does not warrant a new trial, because the evidence only supports one of the elements (injury) but not the other (materiality).

Specifically, Cerami argues that the trial court improperly excluded evidence that he would have been able to pay the First Amended Construction Loan had First Star Bank not defrauded him into entering the Second Construction Loan:

> [Cerami] stated at trial that he would not have entered the $430,000 loan had he known that it was underfunded and would not successfully complete the Project. Cerami further testified that he did not need this loan to successfully operate and eventually complete the Project and that he had sufficient funds to carry on without the bank's third loan. The trial court considered Cerami's testimony concerning the $1.8 million loan and his ability to continue to be irrelevant at trial. When Cerami attempted to introduce evidence concerning the $1.8 million loan, the trial court ruled that it was not relevant that Cerami could have paid off the $1.8 million loan. The trial court made the following statements, 'so the fact that he could have ... paid it off, I don't think it's relevant...' The trial court further stated, 'and then we'll need four or five more days of hearing on it as to whether or not he could have paid it off which is totally irrelevant. It's totally irrelevant.' However, said evidence is relevant and admissible and would have established the requite elements of the materiality of the misrepresentations later deemed by the trial court to have not been established at trial. The evidence [Cerami] sought to introduce would have established that Cerami would not have defaulted on the $1.8 million loan unless he was fraudulently induced into taking on an underfunded $430,000 loan known only to the Bank. This evidence directly refutes the trial court's finding that Cerami would have defaulted anyway even had the Bank paid itself the interest reserves on the $430,000 loan that it had contracted itself to do.

Brief for Appellant, pp. 37-38.

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. *Parr v. Ford Motor Co.*, -- A.3d --, 2014 WL 7243152, *5 (Pa.Super., Dec. 22, 2014) (*en banc*). An abuse of discretion may not be found merely because an appellate court might have

- 14 -

reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. *Id*. In addition, "to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id*.

We need not decide whether the trial court abused its discretion, because it is clear that Cerami did not suffer prejudice from the exclusion of this evidence. Cerami failed to establish two elements of fraud at trial: materiality and injury. The excluded evidence supports the injury element by showing that Cerami would have paid off the First Amended Construction Loan had he not entered the Second Construction Loan. Nevertheless, this evidence does not establish materiality: the fact that Cerami would have paid off the First Amended Construction Loan does not show that the bank lured Cerami into the Second Construction Loan with a material misrepresentation. Indeed, as the trial court perceptively recognized, the bank's alleged misrepresentation about the allocation of the interest reserve was not material to Cerami's decision to enter into the Second Construction Loan.

Because the excluded evidence only pertains to one of the two elements that Cerami failed to prove at trial, it would not have perfected Cerami's defense of fraud and would not have changed the outcome of trial. Therefore, Cerami is not entitled to a new trial.

Judgment affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/24/2015